**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-51287
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

URIEL GARCIA-ORTIZ,

Defendant - Appellant.

Appeal from the United States District Court
For the Western District of Texas

October 28, 2002

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and DAVIS[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Uriel Garcia-Ortiz appeals his sentence of sixteen months' imprisonment for illegal reentry after deportation, in violation of 8 U.S.C. § 1326. Garcia-Ortiz pled guilty to the instant offense, and had a previous conviction for felony possession of less than a gram of cocaine. At sentencing, the district court granted his motion for a downward departure and reduced the offense level to 10. The

_____

[*] District Judge of the Eastern District of Texas, sitting by designation.

offense level, combined with Garcia-Ortiz's criminal history category of III, produced a permissible

sentencing range of ten to sixteen months. Because the sentencing range was within Zone C of the

sentencing table, Garcia-Ortiz then requested that the court impose a "split sentence" under

§ 5C1.1(d) of the Sentencing Guidelines.[1] The district court denied this request, and Garcia-Ortiz

now appeals, contending the court mistakenly believed it could not split the sentence simply because

he was an illegal alien. Garcia-Ortiz points out that nothing in the guidelines prevents the district

court from sentencing an alien to a split sentence, and argues that the district court's refusal on this

ground was error.

We have limited authority to review sentences under 18 U.S.C. § 3742. This Court has

jurisdiction to review a challenge to a sentence only if it (1) was imposed in violation of the law, (2)

was imposed as a result of incorrect application of the guidelines, (3) resulted from an upward

departure, or (4) was unreasonably imposed for an offense not covered by the guidelines. *United

States v. Cooper*, 274 F.3d 230, 248 (5th Cir. 2001). We conclude that a district court's

discretionary refusal to impose a split sentence under Guidelines § 5C1.1(d) does not fall within one

---

[1] The pertinent provisions of § 5C1.1 of the Sentencing Guidelines reads as follows:
>   (a) A sentence conforms with the guidelines for imprisonment if it is within the minimum and maximum terms of the applicable guideline range.
>   . . .
>   (d) If the applicable guideline range is in Zone C of the Sentencing Table, the minimum term *may* be satisfied by –
>>       (1) a sentence of imprisonment; or
>>       (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment.

U.S.S.G. § 5C1.1 (2001) (emphasis added).

of these four circumstances.

The permissive wording of § 5C1.1(d) allows a district court to award either a full term of imprisonment or a split sentence if the guideline range is in Zone C. Either option is a correct "application of the guidelines." In fact, a district court has virtually complete discretion to impose a split sentence under the guidelines. *E.g.*, *United States v. Butler*, 297 F.3d 505, 517 (6th Cir. 2002) (holding § 5C1.1(d) gives district court discretion to sentence defendant to full term of imprisonment or "split" term); *United States v. Carpenter*, 252 F.3d 230, 233 (2d Cir. 2001) (court exercised discretion to impose split sentence); *United States v. Perakis*, 937 F.2d 110, 112 (3d Cir. 1991) (decision whether to impose split sentence under predecessor guideline "unquestionably within the court's discretion").

Similarly, a sentencing court has almost complete discretion to refuse to downwardly depart from the guideline sentencing ranges. *Cooper*, 274 F.3d at 248. In that context, we have repeatedly held that we lack jurisdiction to review the district court's refusal to depart downward, unless the refusal was based on the district court's mistaken belief that it lacked the power to depart. *United States v. Cothran*, 302 F.3d 279, 290-91 (5th Cir. 2002); *Cooper*, 274 F.3d at 248; *United States v. Yanez-Huerta*, 207 F.3d 746, 748 (5th Cir. 2000); *United States v. Landerman*, 167 F.3d 895, 899 (5th Cir. 1999). The reasoning and holdings of these cases apply equally to appeals taken under § 5C1.1(d). Several other circuits have also reached this conclusion, although most have not published opinions on the issue. *United States v. Newsom*, 64 F.3d 660, 1995 WL 493023, at *1 (4th Cir. Aug. 18, 1995); *United States v. Loya*, 51 F.3d 287, 1995 WL 147523, at *1 (10th Cir. Mar. 21, 1995); *United States v. Lively*, 20 F.3d 193, 199 (6th Cir. 1994); *United States v. Aguirre-Pena*, 999

F.2d 544, 1993 WL 242963, at *1-2 (9th Cir. July 6, 1993); *Perakis*, 937 F.2d at 111-12.[2] Thus, on

an issue of apparent first impression, we hold that we have jurisdiction to review the district court's

refusal to award Garcia-Ortiz a split sentence only if the court believed it did not have the discretion,

under the guidelines, to do so because of Garcia-Ortiz's status as an illegal alien.[3]

In addition, the "record must demonstrate that the district court misunderstood its authority."

*Cf*. *Cothran*, 302 F.3d at 291; *Landerman*, 167 F.3d at 899. At the sentencing hearing, the district

court and the public defender had the following exchange:

> THE COURT: Do you have anything else to add to that?
>
> MR. NEWSOME [public defender]: Your Honor, just one thing. At offense Level 10, criminal history category III, that would fall in zone C of the guidance table. Z[one C would allow the Court] to split the sentence. In other words, if the Court chose, the Court could sentence the—
>
> THE COURT: Well, this is an alien. He's not a citizen.
>
> MR. NEWSOME: I see.
>
> THE COURT: So I will not do that.
>
> MR. NEWSOME: Based upon the fact that he is an alien Your Honor? Is that—
>
> THE COURT: Yes, sir, that's the reading.
>
> MR. NEWSOME: Thank you.

---

[2] The unpublished opinions are cited only as persuasive authorities aiding us in the determination of this case. In addition, the cited opinions address an issue that has not been addressed in the published opinions of the referenced circuits. Thus, the citations are in accordance with 4TH CIR. R. 36(c), 10TH CIR. R. 36.3(b), and 9TH CIR. R. 36-3(b), respectively.

[3] We are only considering the jurisdictional issue—whether the district court believed it was exercising its discretion. We note that the guidelines do not explicitly prohibit sentencing courts from imposing split sentences on aliens. We do not decide here, however, whether a district court is ever permitted to issue a split sentence for an alien.

THE COURT:     You have made this—you have urged me to do this on several occasions.  I think it's about time that you let the Fifth Circuit speak on it.

MR. NEWSOME:    I agree.

Garcia-Ortiz argues that this brief exchange conclusively shows that "the district court did not consider any factors other than Garcia's alienage in making its ruling."  Indeed, some of the district court's statements do suggest that it did not believe it could impose a split sentence.  For example, the district court's use of the word "reading" implies that the court had interpreted the guidelines to mean that it did not have the power to grant a split sentence to an alien.  The court's reference to the Fifth Circuit also suggests that the court was interpreting the guidelines, as opposed to exercising its discretion.  As explained above, a discretionary refusal cannot be reviewed by this court, and, if the district court was aware of this, it may have been indicating that this was not an issue of discretion, but instead an issue of interpretation and thus within the scope of our review.

On the other hand, the government makes an equally compelling argument that the district court might have intended to exercise its discretion when it denied Garcia-Ortiz's request.  This argument draws both on the context of the court's statements and the policy reasons for not granting a split sentence to an illegal alien.  At sentencing, the district court was aware that Garcia-Ortiz had prior criminal convictions and had admitted to illegally reentering the United States after deportation. Garcia-Ortiz also had a criminal history category of III, and the commentary to § 5C1.1 states that imprisonment substitutes are not recommended for "most defendants with a criminal history category of III or above."  U.S.S.G. § 5C1.1, cmt. n.7.  Moreover, the court's exchange with defense counsel could have reflected the practical impossibility of granting community confinement or home detention

-5-

to an illegal alien. Home detention cannot be enforced when Garcia-Ortiz resides in another country,[4] and community confinement may also be unrealistic because an illegal alien may well be a flight risk. Thus, when the district court said "I *will* not do that," it may have been just what it sounds like—a discretionary refusal to issue an unenforceable order based on the totality of the circumstances.

Without any indication of the tone or tenor of this brief exchange, it is impossible to determine the rationale behind the district court's decision. A momentary exchange in a written transcript is an inadequate basis for our jurisdiction. In light of the ambiguity in the record, the best course is to remand the case for reconsideration of the sentence.[5] *See, e.g., United States v. Aguilar-Ramirez*, No. 00-50889, at 4 (5th Cir. June 22, 2001) (unpublished) (holding that remand is required where the record is confusing); *United States v. Russell*, 870 F.2d 18, 20-21 (1st Cir. 1989) (remanding the case for clarification when it was not clear whether the district court knew that it had the power to depart downward from the sentencing guidelines). The only issue on remand is whether the district court recognized that it had the discretion to sentence Garcia-Ortiz to a split sentence. If the district court was aware of its discretion and simply refused to do so, then the original sentence should stand. In that case, our jurisdiction to review the sentence would be constrained by 18 U.S.C. § 3742. If

---

[4]*Cf. United States v. Porat*, 17 F.3d 660 (3d Cir. 1994), *vacated on other grounds*, 515 U.S. 1154, 115 S.Ct. 2604, 132 L.Ed.2d 849 (1995). In *Porat*, the Third Circuit held that it was unsuitable for the district court to sentence the defendant to five months' supervised release conditioned on home detention in Israel. Just as in this case, Porat was eligible for home detention under § 5C1.1(d), but the Third Circuit emphasized that neither the district court nor the probation office could assure Porat's compliance with the home detention if he was in Israel. *Id.* at 668-70.

[5] Garcia-Ortiz argues in the alternative that the district court's refusal to impose a split sentence because of his alienage is a violation of the Equal Protection Clause. Because we are unable to determine from the record whether we have jurisdiction to review the sentence, we do not address the merits of this argument. We note, however, that this argument was not raised in the district court and would therefore be reviewed for plain error only. *United States v. Vasquez*, 216 F.3d 456, 459 (5th Cir. 2000).

the district court believed it could not sentence an illegal alien to a split sentence, then Garcia-Ortiz should be resentenced with the district court's full awareness of its discretionary authority. We take no position on what decision the district court should make.

For the foregoing reasons, we REMAND to permit the district court to reconsider its sentence.