# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 15, 2022

Lyle W. Cayce
Clerk

No. 21-50572

United States of America,

*Plaintiff—Appellee*,

*versus*

Chesley Nunley,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:20-CR-159-1

Before Higginbotham, Southwick, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:*

Chesley Nunley pleaded guilty to possessing visual depictions of sexual activities by minors in violation of 18 U.S.C. § 2252A(a)(5)(B). He was sentenced to 135 months, the bottom of the guidelines range, followed by supervised release for the remainder of his life. Nunley timely appeals several

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50572

conditions of his supervised release. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. For the reasons given below, we VACATE Nunley's special conditions of supervised release and REMAND for limited resentencing on those conditions.

Nunley challenges special conditions of his supervised release which, as orally pronounced, state that he

> will not possess or be in any residence where there is a computer, and I don't care how that's defined, whether it's a phone, a laptop, an iPad, a computer.  If it is able to transmit or receive images, the Defendant will not be permitted to have anything that's electronic in his house.
>
> In fact, I'm going to go that broad.  The Defendant will not be allowed to have anything that is electronic in the residence that he's in, whether it's a television, anything that could show visual pictures.  He will have—he will never access the Internet while he is on supervised release, which, again, is for life.[1]

Because he did not object to these conditions below, we review for plain error. *See United States v. Dean*, 940 F.3d 888, 890-91 (5th Cir. 2019).

---

[1] Relatedly, Nunley objects to the following standard condition of his supervised release: "If the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction. The probation officer may contact the person and confirm that the defendant has notified the person about the risk." He argues this condition "impermissibly delegates judicial authority to the probation officer," but the Government correctly responds that Nunley's argument is foreclosed by *United States v. Mejia-Banegas*, 32 F.4th 450, 451-52 (5th Cir. 2022), in which this court rejected the same argument regarding the same condition, concluding there was "no error, plain or otherwise," because the condition "does not impermissibly delegate the court's judicial authority to the probation officer."

To establish plain error, Nunley must show an error that was clear or obvious and that affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes such a showing, this court has the discretion to correct the error, "which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Conditions of supervised release "cannot involve a greater deprivation of liberty than is reasonably necessary to achieve" the statutory goals of 18 U.S.C. § 3583(d)(2). *United States v. Paul*, 274 F.3d 155, 165 (5th Cir. 2001). Nunley argues that lifetime bans on computers, electronics and the Internet involve a greater deprivation than necessary, and their imposition was plain error, relying on our decision in *United States v. Duke*, 788 F.3d 392, 399 (5th Cir. 2015).

In *Duke*, we "addressed whether absolute bans" on computer and Internet access, "imposed for the rest of a defendant's life, are permissible conditions" of supervised release. "We conclude[d] that they are not." *Id.* We found that "the ubiquity and importance of the Internet to the modern world makes an unconditional ban unreasonable," and that an "absolute computer and Internet ban would completely preclude [the defendant] from meaningfully participating in modern society for the rest of his life." *Id.* at 400; *see also United States v. Sealed Juvenile*, 781 F.3d 747, 756 (5th Cir. 2015) ("[A]ccess to computers and the Internet is essential to functioning in today's society."). Such bans, we held in *Duke*, cannot satisfy the requirement that conditions "be narrowly tailored to avoid imposing a greater deprivation than reasonably necessary" because "an unconditional, lifetime ban is the antithesis of a narrowly tailored sanction." *Duke*, 788 F.3d. at 399 (quotation omitted).

Although our review in *Duke* was for abuse of discretion, we noted favorably the Third Circuit's decision in *United States v. Heckman*, 592 F.3d 400, 409 (3d Cir. 2010), for the proposition that "the unconditional, lifetime ban imposed . . . is so broad and insufficiently tailored as to constitute 'plain error.'" *Duke*, 788 F.3d at 399.

In turn, in *United States v. Scott*, 821 F.3d 562, 571 (5th Cir. 2016), we held that it was plain error for a district judge to impose a lifetime computer ban in the context of child pornography possession, reasoning that, in light of *Duke*, such conditions "are clearly erroneous."

The Government argues that *Duke* and *Scott* still leave open the possibility that lifetime computer and Internet bans could, in certain cases, albeit none cited by the Government, involve no greater deprivation of liberty than is reasonably necessary under 18 U.S.C. § 3583(d)(2). "Here," it claims, "Nunley's history and characteristics and the nature and circumstances of the offense" make this such an exceptional case, highlighting that (1) decades ago, Nunley's military training made him familiar with how computer files are encrypted and with the difficulties of searching computers; (2) Nunley told investigators he has a "child pornography addiction"; and, most concerning, (3) Nunley sexually abused his children and his grandchildren, and though he was never charged for these acts, they are described in his presentence report, which he does not contest.

Whether these facts distinguish our controlling precedent in *Duke* and *Scott* presents a difficult question. This is especially so when we would also assess whether the modifiable nature of supervised release conditions implicates whether error at imposition still "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725,

4

736 (1993)). *Compare United States v. Prieto*, 801 F.3d 547, 554 (5th Cir. 2015) (explaining the modifiable nature of supervised release conditions "weighs heavily in our consideration of the fourth prong" because such a condition "works a less significant deprivation of liberty than one which cannot be altered" (internal quotation marks and citation omitted)), *with United States v. Bree*, 927 F.3d 856, 862 (5th Cir. 2019) (explaining that defendants' ability to modify a special condition of supervised release "is only one factor considered as we determine whether to exercise our discretion" (internal quotation marks and citation omitted)).

We pretermit answering this difficult question, however, because we perceive a more basic error. The district court explicitly said it would not define one prohibited item that triggers Nunley's lifetime bans—"a computer"—and appears to have said Nunley cannot "be in any residence" where there is a computer. Moreover, the district court stated Nunley may not live in a residence with any "electronic . . . that could show visual pictures." It is improbable that the district court intended to ban Nunley from any residence with a "smart appliance," or from living in a home with doorbell home-security video transmissions. But if it did, we do not know why; and if it did not, we cannot discern the scope of these conditions.[2]

---

[2] In Nunley's written judgment, both the "computer" condition and the "electronic" condition were defined even more broadly, to the point of preventing Nunley from ever *using* a computer, even outside the home, and from living in a residence with *any* electronics. (The electronics condition states, "There shall be no electronics allowed in the home.") Because "the terms of the oral pronouncement control," *United States v. Madrid*, 978 F.3d 201, 207 (5th Cir. 2020), our analysis focuses on the terms as orally pronounced; however, we take note of the written conditions when considering the unclarity of Nunley's supervised release conditions. *See United States v. Garza*, 448 F.3d 294, 302 (5th Cir. 2006) ("[W]hen there is a conflict between a written sentence and an oral pronouncement, the oral pronouncement controls. However, if there is an ambiguity between the two sentences, the entire record must be examined to determine the district court's true intent. In the case before us, there is an ambiguity in the oral pronouncement itself, and we cannot

"The sentencing court has an obligation to express its sentences in clear terms to reveal with fair certainty its intent." *United States v. Patrick Petroleum Corp. of Michigan*, 703 F.2d 94, 98 (5th Cir. 1982); *accord United States v. Taylor*, 973 F.3d 414, 421 (5th Cir. 2020) ("Criminal sentences must reveal with fair certainty the intent of the court."); *see also United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002) ("A probationer . . . has a separate due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison."). Where this obligation has not been met, it may be "in the interest of judicial economy and fairness to all concerned parties that we remand for clarification of the sentence." *Patrick Petroleum Corp. of Michigan*, 703 F.2d at 98; *accord United States v. Juarez*, 812 F.3d 432, 437 (5th Cir. 2016) (finding a sentence was "unclear or ambiguous" and therefore "vacat[ing] and remand[ing] for clarification in the interest of judicial economy and fairness to all concerned parties"); *United States v. Garcia–Ortiz,* 310 F.3d 792, 795 (5th Cir. 2002) ("In light of the ambiguity in the record, the best course is to remand the case for reconsideration of the sentence."). Given the difficulties of the issues this case raises and our lack of clarity about the intended scope of the orally pronounced conditions, set against our binding precedent in *Duke* and *Scott*, we hold that a remand for clarification is the best course of action.

Accordingly, Nunley's special conditions of supervised release are VACATED and the case is REMANDED to the district court for limited resentencing on the special conditions of supervised release. We encourage the district court to clearly delineate the scope of any re-imposed restrictions

---

ascertain the district court's true intent from an examination of the record." (internal quotation marks and citations omitted)).

on computers, electronics, and the Internet, and to the extent their scope is in tension with *Duke*, to more clearly explain why *Duke* must here give way.